**In the United States District Court for the Eastern District of Virginia
Alexandria Division**

**United States of America,**

**v.**                                         **Docket No. 1:11-cr-00554-**
                                              **The Hon. T.S. Ellis III**

**Jubair Ahmad.**

### <u>Defendant's Reply to Government's Opposition</u>

In its January 27 response, the government focuses on COVID-19 but fails to address the multiple dimensions of his request: his rehabilitation and nonexistent criminal history; the years of his incarceration spent at a facility with no direct sunlight or outdoor access; as well as BOP's failure to address the COVID-19 pandemic.

First, Mr. Ahmad's response relies only in part on the COVID-19 pandemic. Mr. Ahmad also relies on his conditions of confinement. At the time of his 2012 sentencing, it is unlikely any of the parties anticipated that Mr. Ahmad would spend years of his sentence in an administrative facility where he would not have access to sunlight or the outdoors. Of course, the parties also could not have anticipated the COVID-19 related lockdowns that, in addition to preventing family visits, have limited Mr. Ahmad's access to phone calls and emails with family and his legal team. Mr. Ahmad also reports that BOP measures have resulted in the integration of different security classifications, meaning Mr. Ahmed – who would be

1

a minimum risk but for his ICE detainer – is incarcerated with inmates several security classifications higher.

In addition, the government offers the conclusory statement that the "United States has concerns about the defendant's release." Doc. 73 at 15. This statement is not supported by facts: the government provides no recidivism data suggesting a risk; no statements suggesting Mr. Ahmed is a recidivism risk; and no incidents undermining his significant rehabilitation. Over nine years ago, Mr. Ahmad made a 5-minute recruiting video a dangerous organization. Since then, he has accepted responsibility and renounced the organization and its teachings in letters to the Court. For that video, he has served a significant prison sentence.

With regard to COVID-19, the government argues that Mr. Ahmad does not have a particularized risk of contracting the virus. The government's response reviews in detail the measures that BOP has taken to manage the spread of COVID-19. Yet over 46,000 of the BOP's 123,232 inmates have contracted COVID-19; at Mr. Ahmad's facility, FCI SeaTac, 235 of 662 inmates have contracted the virus.[1] The BOP measures are simply not working. Given the virus's spread at FCI SeaTac and throughout BOP, particularized risk is unnecessary: every BOP inmate is at significant risk of COVID-19. Moreover, as Mr. Ahmad indicated in his original motion, COVID-19 kills not just those with heightened risk factors.[2] Eight percent

---

[1] *See* https://www.bop.gov/coronavirus/.
[2] *See* Faust, et. al., *People Thought Covid-19 Was Relatively Harmless for Younger Adults. They Were Wrong*, The New York Times (Dec. 16, 2020), available at: https://www.nytimes.com/2020/12/16/opinion/covid-deaths-young-adults.html.

of the United States population has contracted COVID-19[3]; in the BOP, it is 37%. For nearly a year, BOP has proven that it is not able to control the spread of the virus.

While it is true that no one at FCI SeaTac has yet died of COVID-19, the same could be said of FCI Terre Haute on January 8, 2021 before Shauntae Hill succumbed to the virus. *See* Exhibit 1, Compiled BOP Press Statements Regarding COVID-19 deaths. The same could be said for FCI Memphis on January 11, 2021 before Harry Cunningham died of COVID-19. *Id.* Or FCI Jesup on January 7, 2021 before Kevin Gayles died. *Id.* No one at FCI SeaTac has yet died from COVID-19; that is not a reason to forego a critical examination of the spread and vulnerability of the inmates.

The government also raises the question of relative safety and infection rates in ICE custody and in Pakistan. According to ICE, the rate of infection in their custody is 3.4%.[4] Based on the data available to Johns Hopkins University, in Pakistan,  0.25% of the population[5] has contracted COVID-19 – a fraction of that of FCI SeaTac, the BOP population generally, or the United States as a whole.

Mr. Ahmad requests that the Court consider the entirety of his sentence reduction request: his significant rehabilitation, the unforeseen conditions of his

---

[3] Based on population data from the World Bank (https://data.worldbank.org/indicator/SP.POP.TOTL?locations=US) and COVID-19 data from Johns Hopkins University (https://coronavirus.jhu.edu/map.html).

[4] *See* https://www.ice.gov/coronavirus#detStat.

[5] Based on population data from the World Bank (https://data.worldbank.org/indicator/SP.POP.TOTL?locations=PK).

confinement at FCI SeaTac, his ineligibility for home confinement such that he

serve the entirety of his sentence, and the high rates of COVID-19 at FCI SeaTac –

particularly when compared to ICE and Pakistan.

Respectfully Submitted:

By: _____/s/_____

Nathaniel Wenstrup,
Assistant Federal Public Defender
Admitted *Pro Hac Vice*
1650 King Street, Suite 500
Alexandria, VA 22314
Nate_Wenstrup@fd.org
(703) 600-0825 – direct
(703) 800-0880 - fax

4